JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **JACQUELINE TAYLOR, an individual,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ALLIED INTERSTATE, LLC,**<br><br>**Defendant.** | **Case No.: SACV 16-00248-CJC(KESx)**<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO STAY** |

## I. INTRODUCTION

Plaintiff Jacqueline Taylor has brought this suit against Defendant Allied Interstate, LLC under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227 *et seq.*, based on her allegation that Allied placed calls to her mobile phone without her

consent. Allied asserts that the prior owner of Taylor's number had consented to Allied calling it to collect a debt, and that Allied called the number to reach the prior owner without realizing that the number had been changed. An FCC Opinion holding that a defendant can be liable under the TCPA in such circumstances is currently on review before the District of Columbia Court of Appeals. *See ACA Int'l v. Fed. Commc'ns Comm'n*, No. 15-1211 (D.C. Cir.) (the "ACA Appeal"). Allied has filed a motion seeking to stay this litigation until the D.C. Circuit issues its decision in the ACA Appeal. For the following reasons, the Court GRANTS Allied's motion.[1]

## II. BACKGROUND

Allied asserts that when it placed calls to Taylor, it was attempting to reach a woman named Robyn Slepicoff at a telephone number she had provided to a creditor in connection with a financial transaction. (Dkt. 8-1, Kalluri Decl. ¶ 4.) Allied's client, a lender, had provided Allied with the number and indicated that it was a good number to reach Slepicoff. (*Id.* ¶ 5.) Based on Slepicoff's alleged consent to receive calls and Allied's belief that the telephone number provided was a home number, Allied made numerous call attempts looking for Slepicoff. (*Id.* ¶ 6.) Allied represents that these calls were made for the purpose of collecting a debt and that none of the calls resulted in contact with a live person. (*Id.*) Allied asserts that unbeknownst to it, Slepicoff's telephone number had apparently been reassigned to Taylor, so Taylor's phone—as opposed to Slepicoff's—received the calls.

Based on these calls, Taylor asserts two claims against Allied for alleged TCPA violations. (Dkt. 1, Compl.) Count 1 asserts a claim for "negligent violations" of the

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for May 23, 2016 at 1:30 p.m. is hereby vacated and off calendar.

TCPA, which carries a statutory penalty of $500 per violation. 47 U.S.C. § 227(b)(3)(B). Count 2 asserts a claim for "knowing and/or willful violations" of the TCPA, which carries a statutory penalty of $1,500 per violation. 47 U.S.C. § 227(b)(3)(C). The TCPA makes it unlawful for a person to "make any call (other than a call made for emergency purposes or *with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice . . ." 47 U.S.C. § 227(b)(1)(A) (emphasis added). The TCPA thus provides a defense where the "called party" gave prior express consent to receive calls.

The TCPA does not define the term "called party," and this has led to an ongoing disagreement. Many plaintiffs argue that the "called party" is the person who answers the phone or is assigned the number at the time of the call. Defendants counter that the "called party" is the intended recipient and that the called party's prior express consent applies even if the recipient's number has been reassigned. In July 2015, the FCC released a declaratory ruling addressing this issue by defining a "called party" as the:

> subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Thus, with the limited exception discussed below, calls to reassigned wireless numbers violate the TCPA when a previous subscriber, not the current subscriber or customary user, provided the prior express consent on which the call is based.

FCC Order ¶ 73 (footnotes omitted). The "limited exception" mentioned in the FCC Order provides that if a caller believes he has consent to call a number that has been reassigned, the caller can make one call to that number without penalty—"the caller is liable for any calls thereafter" regardless of whether he learns during the first call that the number was reassigned. (*Id.* ¶ 85.) The FCC Commissioners were strongly divided over this holding, with three favoring it and two dissenting, with a chief concern amongst the dissenters being that "[t]here is simply no realistic way for a company to comprehensively determine whether a number has been reassigned," and that it would be

improper to penalize companies under such circumstances. (*Id.* at 8093, O'Reilly Dissenting.)

Numerous companies have filed petitions in courts of appeals to vacate the FCC's ruling. *See Fontes v. Time Warner Cable Inc.*, No. CV14-2060-CAS(CWX), 2015 WL 9272790, at *3 (C.D. Cal. Dec. 17, 2015). These petitions were consolidated into a single case in the D.C. Circuit (the ACA Appeal), which is now fully briefed. *Id.*

According to the United States Court Caseload Statistics Data, the median time for the D.C. Circuit to issue a final order on an administrative agency appeal is just over seven and a half months from the time the briefs are submitted.[2] Briefs in the *ACA* appeal were submitted by the end of February 2016. (Dkt. 8-3 Ex. D, ACA Appeal, Petitioners' Joint Final Reply Br.; ACA Appeal, 15-1211 (D.C. Cir.)) It is therefore reasonable to expect that a final order will be issued in October or November of this year.

## III. ANALYSIS

A district court may exercise its discretion to stay proceedings. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "In considering whether a stay is appropriate, courts weigh three factors: (1) the possible damage which may result from the granting of a stay, (2) the hardship or inequity which a party may suffer in being required to go forward, and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."

---

[2] (*See* Dkt. 12-1, Exhibit A to Def.'s Reply Br., U.S. Courts of Appeals—Median Time Interval in Months for Administrative Agency Appeals Terminated on the Merits, by Circuit, During the 12-Month Period Ending September 30, 2015, available at http://www.uscourts.gov/statistics-reports/caseload-statistics-data-tables (last visited on May 9, 2016).) The court may take judicial notice of this document under Fed. Rule of Evid. 201 because it is a matter of public record. *See Stone v. U.S. Sec. Assocs., Inc.*, No. 15–cv–00235–JST, 2015 WL 2438029, at *2 (N.D. Cal. May 21, 2015) (taking judicial notice of judicial caseload profiles available on the U.S. Courts website).

*Gustavson v. Mars, Inc.*, No. 13-CV-04537-LHK, 2014 WL 6986421, at *2 (N.D. Cal. Dec. 10, 2014) (citing *Landis*., 99 U.S. at 254-55).

Under the circumstances here, it is appropriate to stay this case until the D.C. Circuit issues its opinion reviewing the FCC's declaratory ruling. Given the sharp disagreement amongst the FCC commissioners, there is a real possibility that the D.C. Circuit may overturn the FCC's ruling. Furthermore, the definition of "called party" is likely a dispositive issue in this case. Staying the case will conserve the parties' resources. If the case proceeds at this time, both parties would expend time and resources on discovery issues and motion practice. It is possible that a substantial amount of work on the case would have to be redone should the matter proceed with those decisions still pending. Avoiding the unnecessary expenses involved weighs in favor of a stay. *See Fontes*, 2015 WL 9272790, at *5.

Furthermore, there is little indication that a stay will prejudice Taylor. First, there is no ongoing harm—Taylor alleges receiving calls from Allied back in May 2015. (Compl. ¶ 19.) She does not allege that Allied ever called again. That eliminates one possible form of prejudice. *See Gusman v. Comcast Corp.*, No. 13CV1049-GPC, 2014 WL 2115472, at *4 (S.D. Cal. May 21, 2014) ("Moreover, Plaintiff will not be prejudiced since he stopped receiving calls in the Fall of 2013 . . .").

The fact that this case is also in the early stages of litigation also weighs in favor of granting a stay. *Glauser v. Twilio, Inc.*, NO. C 11-2584 PJH, 2012 WL 259426, at *3 (N.D. Cal. Jan 27, 2012) ("[I]n view of the early stage of the present action, the court finds that the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to the plaintiff in allowing the action to proceed.")

Here, there is also little risk of losing evidence if there is a stay. TCPA cases turn on the plaintiffs' phone records and the defendant's documentation of account activity and calls made as opposed to the potentially fading memories of witnesses. The parties must preserve their documentary evidence while the stay is in place, and Taylor has not indicated that delaying this litigation for a few months would harm the parties' access to the pertinent evidence.

If the D.C. Circuit were to vacate the FCC's ruling, it is likely that substantial work done by the parties here would be rendered moot. Given that possible harm, the risk of wasting the Court's resources, and the uncertainty in this area of the law, the Court finds that a stay is appropriate here. *See Fontes*, 2015 WL 9272790, at *4-5; *Kolloukian v. Uber Techs., Inc.*, No. CV 15-2856-PSG-JEM, 2015 WL 9598782, at *1 (C.D. Cal. Dec. 14, 2015).

**IV. CONCLUSION**

Accordingly, Defendant's motion to stay is GRANTED.

DATED: May 17, 2016

CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE